## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARL PARSON, | ) |
| Plaintiff, | ) ) |
| | ) Case No. 16-CV-423-JED-TLW |
| v. | ) ) |
| DON FARLEY, | ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

**I. Removal of Tort Action**

Plaintiff, Carl Parson, initiated this tort action in the Rogers County District Court. Parson alleges that the defendant, Don Farley, defamed him by writing intentional false statements about Parson to the Inola Area Chamber of Commerce. Parson asserts that Farley made the statements with malice, while knowing the statements were false, and with the intent to cause harm to Parson. Parson asserts claims for libel, libel per se, and false light invasion of privacy. Farley removed the state court action, based upon diversity jurisdiction, as Farley avers that he resides in Mobile, Alabama, Parson resides in Oklahoma, and the amount in dispute exceeds $75,000. (*See* Doc. 2).

**II. Motion to Remand**

Parson moves to remand to state court for lack of diversity jurisdiction. He alleges that Farley has significant ties to Oklahoma and is thus domiciled in Oklahoma, rather than in Alabama. (Doc. 12). Farley alleged in the Notice of Removal that, both at the time of the filing of the action and now, he was and is a "resident" of Alabama. (Doc. 2 at 2). As Parson correctly points out, an allegation of residency, standing alone, is insufficient to establish citizenship. *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015) ("An individual's residence

is not equivalent to his domicile and it is domicile that is relevant for determining citizenship."). However, residence is one component of domicile. A person is domiciled in the state where the person (1) resides and (2) intends to remain indefinitely. *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). When considering the two-part citizenship / domicile test, a district court should consider the totality of the circumstances. *Id.* Examples of relevant evidence include the party's current residence, voter registration and voting practice, membership in churches, clubs, driver's license and automobile registration, payment of taxes, and numerous other aspects of human life and activity. *Id.* at 1201.

Even though the Notice of Removal itself did not refer to domicile, Farley attached a sworn affidavit to the Notice of Removal, wherein he stated that he is "citizen and resident" and is "domiciled in Mobile, Alabama." (Doc. 2-2). He also indicated that he is a registered voter in Alabama and that he would vote in the November elections there. (*Id.*). He identified a Mobile, Alabama church of which he is a member. (*Id.*). Farley further stated that, although he "occasionally" visits Tulsa, Oklahoma to tend to his son's business interests, he remains a citizen, resident, and domiciliary of Mobile, Alabama. (*Id.*).

In his Motion to Remand, Parson points to evidence that Farley has significant ties to Oklahoma, which include: (1) maintaining a post office box in Sapulpa, Oklahoma; (2) involvement in matters relating to the Estate of Farley's deceased brother, which is apparently pending in Sequoyah County, Oklahoma; (3) identification as an incorporator and registered agent of the Kellyville Historical Museum, Inc., with an address in Sapulpa, Oklahoma; (4) filing of past income tax returns in Oklahoma; and (5) maintenance of an Oklahoma driver's license. (*See* Doc. 12-1, 12-2 and Doc. 19). In contrast, Farley has presented evidence, including his sworn testimony, that: he used to live in Oklahoma, but for the last six years, he has called Alabama

"home"; he has "lived there" (in Alabama) since 2010; he has community ties to Alabama, including church membership and voter registration; he spends his "living experiences" in Alabama; he would vote in Alabama in the November 2016 elections; and he intends to continue living in and considering Alabama his "home." (Doc. 22-1). With respect to the Oklahoma ties that Parson references, Farley testified that multiple family members have access to and receive mail at the post office box in Sapulpa, but that he and his wife actually "live" in Alabama. (*Id.* at 11). He sometimes visits Oklahoma because he is handling his deceased brother's estate in Oklahoma and he assists in his son's business interests at times. (*See id.* at 11-12).

Upon consideration of the totality of the circumstances, including the sworn statements of Farley and all of the evidence submitted with respect to domicile, the Court finds that Farley is domiciled in, and is therefore a citizen of, the State of Alabama. While Farley has maintained significant ties and a post office box in Oklahoma, where he used to reside, since the date of the filing of this action, he has resided in Alabama, considered it "home," and has intended to remain there indefinitely. The Motion to Remand (Doc. 12) is **denied**.

### III. Motion to Dismiss

Farley moves under Fed. R. Civ. P. 12(b)(6) to dismiss Parson's pleading for failure to state a claim upon which relief can be granted. (Doc. 9, 11). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Rule 12(b)(6) standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555-56, 570 (citations omitted). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough facts to

raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 562. For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the claimant. *See Twombly*, 550 U.S. at 555. *Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).

The crux of Farley's motion to dismiss is his argument that the letter (which has been filed under seal as Doc. 9-1) involved matters of public concern because Parson was running for state office and was thus a public figure, such that the letter is protected speech under the First Amendment, requiring that Parson show "actual malice" under the *New York Times* rule. *See New York Times v. Sullivan*, 376 U.S. 254, 279-282 (1964). In *New York Times*, the Supreme Court held that a public official cannot recover "for defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' – that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 279-80.

According to Farley, the state court petition does not plausibly allege actual malice. The Court disagrees, because Parson has alleged facts that plausibly state claims for libel and false light, and his pleading (Doc. 2-1) includes allegations that plausibly plead actual malice under the *New York Times* rule. Parsons asserts that he owns and operates a business in Inola, Oklahoma and that he and his business are members of the Inola Chamber of Commerce. (Doc. 2-1 at ¶ 9-10). He asserts that the Inola Chamber of Commerce received a written letter from Farley and, in

that letter, Farley "wrote intentional false statements about [Parson], with knowledge of their falsity, for the intentional and malicious purpose to defame [Parson]." (*Id.* at ¶¶ 4-6). That allegation, alone, describes actual malice as defined in *New York Times*. *See* 376 U.S. at 279-80.

Parson further alleges that the letter was seen and read by the Inola Chamber of Commerce's administrators and subjected Parson to "contempt, ridicule, distrust, obloquy, disgrace, dishonor, ill repute, scandal, shame and falsely states on its face that [Parson] is accused of [a] crime of moral turpitude." (*Id.* at ¶¶ 12-13). As a result, Parson alleges that he suffered loss of reputation and injury to his name and reputation as a local businessman and member of the Chamber of Commerce and to him in his capacity as a candidate for State Representative. (*Id.* at ¶ 14). Parson repeatedly alleges that the letter was not privileged, was published with malice, and that the statements in the letter were made by Farley while knowing they were false and were intentionally written for the purpose of defaming and causing harm to Parson. (*Id.* at ¶¶ 4, 7, 15, 17, 18, 26). Those allegations are sufficient to plausibly assert actual malice. The motion to dismiss (Doc. 9, 11) is thus **denied**.

SO ORDERED this 27th day of April, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE