# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARL PARSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16-CV-00423-JED-JFJ |
| ) | |
| DON FARLEY, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is the Motion of Eugene Volokh ("Volokh") (1) to Intervene, (2) Unseal Record Documents, (3) to File Via CM/ECF, and (4) to Consider this Motion on an Expedited Basis ("Motion to Intervene and Unseal") (ECF No. 58), which was referred by United States District Judge John Dowdell.

For reasons explained below, the Court: (1) grants Volokh's motion to intervene for the limited purpose of requesting access to sealed documents pursuant to Federal Rule of Civil Procedure 24(b); (2) grants Volokh's motion to unseal all sealed documents in this case; (3) grants Volokh's motion to file documents electronically; and (4) denies Volokh's request for expedited consideration.

**I.      Magistrate Judge's Authority to Grant Motion to Intervene**

"The jurisdiction and powers of magistrates are governed by 28 U.S.C. § 636, and limited by the Constitution, U.S. Const. art. III, § 1." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461 (10th Cir. 1988). Magistrate judges may "hear and determine any pretrial matters pending before the court, save for eight excepted motions," which are generally referred to as "dispositive motions." *Id.* Magistrate judges may issue orders on non-dispositive pretrial matters, which are reviewed for clear error. *Id.* Magistrate judges must issue proposed findings and

recommendations on dispositive matters, which are reviewed de novo. *See id.*; 28 U.S.C. § 636(b)(1)(A)-(C); Fed. R. Civ. P. 72 (reflecting division in § 636(b) between non-dispositive and dispositive matters).

Motions to intervene are not expressly excepted from a magistrate judge's authority in § 636(b)(1)(A), but that does not end the inquiry. Under Tenth Circuit law, even "motions not designated on their face as one of those excepted in subsection (A) are nevertheless to be treated as such a motion when they have an identical effect." *Ocelot Oil Corp.*, 847 F.2d at 1462 (explaining that magistrate judge's order striking pleadings as a discovery sanction had the effect of an involuntary dismissal, rendering it "beyond the power of a magistrate to order" and subject to de novo review); 12 Charles A. Wright et al., *Federal Practice & Procedure* § 3068.2 (2d ed. 2018) (explaining that Tenth Circuit has adopted a "textured approach [that] permits a more sensible determination when de novo review should be required than does a jurisprudence of labels").

In this case, granting Volokh's request to intervene for the limited purpose of seeking public access to court documents does not have any dispositive effect on the parties or claims, and the Court may rule on this non-dispositive matter by Order. *See Day v. Sebelius*, 227 F.R.D. 668, 671 (D. Kan. 2005) ("As a matter of law, an order granting leave to intervene is non-dispositive.") (citing *United States v. Certain Real Prop. & Premises Known as 1344 Ridge Rd., Laurel Hollow, Syosset, N.Y.*, 751 F. Supp. 1060, 1061 (E.D.N.Y. 1989)). The limited purpose of the requested intervention in this case also supports classification as "non-dispositive." Further, the related motion to unseal, which is the object of Volokh's intervention, also presents a non-dispositive,

pretrial matter that can be ruled on by Order. Therefore, the Court issues this Opinion and Order disposing of all issues presented by the Motion to Intervene and Unseal pursuant to Rule 72(a).[1]

## II. Factual Background and Procedural History

Sometime prior to April 16, 2016, Plaintiff Carl Parson ("Parson") served as administrator of the estate of Defendant Don Farley's ("Farley") brother and sued Farley to recover property allegedly taken by Farley from his brother's estate. On April 16, 2016, Farley allegedly sent a letter containing false and defamatory statements about Parson to the Inola Chamber of Commerce (the "Letter").[2] When the Letter was sent, Parson was a candidate for the Oklahoma House of Representatives. On May 23, 2016, Parson filed a Petition in Rogers County, Oklahoma, asserting claims against Farley for libel and false light invasion of privacy, seeking money damages, along with temporary and permanent injunctive relief. Parson alleges that Farley published the Letter to the Inola Chamber of Commerce out of "hatred, ill will, malice, and only with the desire to intentionally injury [Parson] as a business owner." ECF No. 2-1 at ¶ 17.

When filing the Petition, Plaintiff moved to file the Letter under seal pursuant to Oklahoma law governing sealed court records. *See* Okla. Stat. tit. 51, § 24A.30 ("If confidentiality is not required by statute, the court may seal a record or portion of a record only if a compelling privacy interest exists which outweighs the public's interest in the record."). On May 23, 2016, the state court entered an Order to Seal a Portion of the Record with Findings of Fact and Conclusions of Law ("Sealing Order") pursuant to Okla. Stat. tit. 51, § 24A.30. The court found in relevant part:

---

[1] A referring district judge may always treat any "order" as a "recommendation" and apply what it deems the proper standard of review. *See* 12 Charles A. Wright et al., *Federal Practice & Procedure* § 3068.2 (2d ed. 2018) (explaining that district courts "inquire[] into the nature of the matter referred to a magistrate, rather than merely scanning the list of motions found in subsection (b)(1)(A), to determine the proper attitude they should take toward objections").

[2] Although Parson refers to this document as a letter in his Petition, it is more like a flyer or bulletin. For consistency with the Petition, the Court refers to it as the Letter.

(1) the Letter contains words that "without hearing on the merits tend to be actionable by themselves or are opprobrious and that the Letter clearly refers to the Plaintiff"; (2) "additional publication by filing in the public record of the Letter . . . would only serve to further harm the Plaintiff's right to privacy"; and (3) "an order can be narrowly tailored . . . to keep that portion of the record sealed and prevent irreparable harm to the Plaintiff . . . until such time as the matter can be heard on its merits or further order of this Court."  ECF No. 7-1.

Farley removed the case to this Court based on diversity jurisdiction and filed a motion to file documents under seal in accordance with the Sealing Order, which Judge Dowdell granted by minute order.  ECF No. 8.  On July 28, 2016, Farley filed an Answer (ECF No. 10), a Motion to Dismiss ("7/28/16 Motion to Dismiss") (ECF No. 11), and a sealed version of the 7/28/16 Motion to Dismiss, which attaches the Letter (ECF No. 9).  Parson filed a Motion to Remand two days later.  Judge Dowdell entered an Opinion and Order that (1) denied Parson's Motion to Remand on grounds that Farley is a citizen of Alabama; and (2) denied Farley's 7/28/16 Motion to Dismiss on grounds that Parson's allegations are sufficient to "plausibly assert actual malice" for purposes of the standard in *New York Times v. Sullivan*, 376 U.S. 254, 279-282 (1964).  ECF No. 26 at 4-5.  After his attorneys withdrew from the case, Farley filed a notice of intent to proceed pro se and has defended the lawsuit pro se since November 9, 2017.

On January 12, 2018, several months before the dispositive motion deadline, Farley filed a pro se motion seeking dismissal, summary judgment, or, alternatively, an order to compel Parson to respond to Farley's discovery requests ("1/12/18 Dispositive Motion").  ECF Nos. 46, 47.  Because the 1/12/18 Dispositive Motion referenced the contents of the Letter, Farley sought and received permission to file it under seal.  ECF Nos. 48, 49.  Parson publicly responded to the 1/12/18 Dispositive Motion (ECF No. 50), but he filed his attached affidavit under seal.  ECF No.

4

51. The undersigned denied Farley's alternative request to compel further discovery responses, (*see* ECF No. 56), and the remaining aspects of the 1/12/18 Dispositive Motion are pending.

On June 5, 2017, proposed intervenor Volokh, who appears pro se, moved to permissively intervene pursuant to Federal Rule of Civil Procedure 24(b). Volokh is a law professor "who writes for the Volokh Conspiracy, a prominent legal blog hosted by Reason Magazine" and who "would like to have access to the full record in this case so that both he and members of the public may better understand" the issues. ECF No. 58 at 2. Volokh moves the Court to unseal all sealed documents and provide public access to the Letter and related filings. *Id.* at 2-3. In addition to requesting intervention and unsealing of documents, Volokh seeks expedited consideration of his motion and permission to file future documents via the Court's electronic filing system.

Parson objects to the Motion to Intervene and Unseal, while Farley does not object. In his response, Parson raises the following procedural and substantive arguments: (1) the Motion to Intervene and Unseal is untimely and prejudicial to Parson's rights (ECF No. 60 at 2-5); (2) Volokh's interests are adequately represented by Farley (*id.* at 5-8); (3) the Sealing Order controls the outcome of Volokh's pending motion to unseal (*id.* at 8-9); and (4) Parson's privacy interests in the contents of the Letter outweigh the presumption of public access (*id.* at 9-14). The Court addresses all arguments but organizes this Opinion and Order into two sections addressing the motion to intervene and motion to unseal.

### III. Motion to Intervene

For reasons explained below, Volokh has demonstrated Article III standing and has satisfied Rule 24(b)'s procedural requirements.

### A. Volokh Has Independent Article III Standing

Article III standing is a threshold issue that must be considered at all stages of the proceedings. *See City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1078 (10th Cir. 2009) (addressing intervenor's standing as a threshold question even though not raised by parties or district court). "Any party, whether original or intervening, that seeks relief from a federal court must have standing to pursue its claims." *Id.* (quotations omitted). This Court recently held that it was "not persuaded to overlook or dispense with standing requirements" simply because a party sought intervention for the purpose of seeking public access to protected documents. *Young v. Glanz*, No. 13-CV-315-JED-JFJ, 2018 WL 1588026, at *7 (N.D. Okla. March 31, 2018); *see also Okla. Hosp. Ass'n v. Okla. Publ'g Co.*, 748 F.2d 1421, 1424-25 (10th Cir. 1984) (requiring publishing company seeking modification of protective order for purpose of gaining public access to discovery materials to demonstrate Article III standing); *Exum v. U.S. Olympic Comm.*, 209 F.R.D. 201, 204 (D. Colo. 2002) ("The parties seeking intervention under Rule 24(b) must have standing to challenge the proposed protective order."); *SanMedica Int'l v. Amazon.com, Inc.*, No. 2:13–CV–00169, 2015 WL 6680222, at *3 (D. Utah Nov. 2, 2015) (addressing law professor's standing as separate inquiry); *Angilau v. United States*, 2:16–00992–JED–PJC, 2017 WL 9496068, at *4-5 (D. Utah July 27, 2017) (addressing standing as part of Rule 24(b) inquiry), *aff'd*, No. 2:16-CV-00992–JED–PJC, 2018 WL 1271894 (D. Utah Mar. 9, 2018). Therefore, the Court inquires as to whether Volokh can demonstrate standing to intervene, in addition to satisfying Rule 24(b)'s requirements.

Generally, a proposed intervenor can establish independent Article III standing by showing:

> (1) [that] it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

traceable to the challenged action of the [opposing party]; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Climax Molybdenum Co.*, 587 F.3d at 1079. Alternatively, a proposed intervenor can establish "piggyback standing," which applies where there exists an ongoing case or controversy and "another party with constitutional standing on the same side as the intervenor remains in the case." *Id.* at 1080 (quoting *San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc)) (quotation marks omitted; emphasis removed).

In this case, Volokh seeks to establish independent Article III standing (*see* ECF No. 58 at 4-5), and Parson has not challenged Volokh's standing. The Court finds that Volokh has established independent Article III standing to intervene for the limited purpose of seeking public access to judicial records. First, Volokh has shown a concrete and particularized injury to his right of public access caused by the Sealing Order because, but for the Sealing Order, Volokh would be able to gather information from the record and disseminate his opinion regarding this litigation through his blog. *See Okla. Hosp. Ass'n*, 748 F.2d at 1424 (finding sufficient injury in fact where proposed intervenor alleged that, but for the protective orders, it would be free to gather and publish discovery documents not subject to those orders); *SanMedica Int'l*, 2015 WL 6680222, at *3 (holding that professor's interest in obtaining redacted information in summary judgment opinion for purpose of authoring legal blog constituted Article III injury in fact) (citing *Oklahoma Hospital Association* and other circuit decisions). Volokh has also established the redressability prong because, if this Court lifts the Sealing Order and unseals the requested judicial records, Volokh's injury will be redressed. *See San Medica, Int'l*, 2015 WL 6680222, at *4 ("Because the information would be made public if the court granted her Motion to Unseal, [the professor/blogger's] injury is likely to be redressed by a favorable decision.") (emphasis removed);

7

*cf. Okla. Hosp. Ass'n*, 748 F.2d at 1425 (publishing company seeking to modify protective order and gain access to *pretrial discovery materials* could not show redressability because court could not compel parties to disseminate documents in their possession).

Volokh correctly argues that this Court's Opinion and Order in *Young v. Glanz*, No. 13-CV-315-JED-JFJ, 2018 WL 1588026, at *6 (N.D. Okla. March 31, 2018), is factually distinguishable. The proposed intervenor in *Young*, a member of the press, had sought to modify a protective order to gain access to pretrial discovery materials subject to a protective order. The defendants challenged the press's ability to demonstrate standing, but the press argued it had no obligation to show standing. Upon reconsideration, this Court reversed a prior order granting the press intervention and held: (1) in the absence of clear Tenth Circuit authority, the Court was not persuaded to dispense with a proposed intervenor's Article III standing requirements, whether the litigation was ongoing or concluded;³ (2) the press failed to even attempt to demonstrate standing; and (3) the Court could not conclude standing was "obviously satisfied," because the requested pretrial discovery would not be made available to the press simply by virtue of the Court's modification of the protective order. *Young*, 2018 WL 1588026, at *6-7. The Court did not reach any conclusion as to whether the press could have shown standing (either independent or "piggyback" standing) had it attempted to do so, and the Court denied the motion to intervene without prejudice to refiling. *Id.* at *7. In this case, Volokh made proper standing arguments. Further, this case involves a straightforward case of redressability, because Volokh will obtain his requested relief if the Court unseals the records.

---

³ The Court noted contrary authority in the context of ongoing litigation. *See id.* at *7 n.8.

8

### B. Volokh Satisfied Rule 24(b)'s Requirements

Federal Rule of Civil Procedure 24(b), which governs permissive intervention, is the proper procedural mechanism for a non-party to seek access to judicial documents. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) ("The courts have widely recognized that the correct procedure for a nonparty to challenge a protective order is through intervention for that purpose.") (citation omitted); *Young*, 2018 WL 1588026, at *5; *SanMedica Int'l*, 2015 WL 6680222, at *2. Relevant to this case, Rule 24(b)(1) permits anyone to intervene who files a timely motion, and who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).[4] A court must also consider whether intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Whether to grant permissive intervention pursuant to Rule 24(b) is within the sound of discretion of the court. *Shump v. Balka*, 574 F.2d 1341, 1345 (10th Cir. 1978).

"Timeliness is to be determined from all the circumstances," and the question of timeliness is one left to the Court's discretion. *NAACP v. New York*, 413 U.S. 345, 366 (1973). The status and progress of a lawsuit "is not solely dispositive" of the issue. *Id.* In considering the timeliness of a motion to intervene, the Tenth Circuit distinguishes motions to intervene on the merits from motions to intervene "for the sole purpose of challenging a protective order." *United Nuclear*, 905 F.2d at 1427. In *United Nuclear*, the court held that a motion to intervene three years after the case settled was timely, because Rule 24's purpose of "prevent[ing] prejudice in the adjudication

---

[4] Parson does not challenge Rule 24(b)'s "common question of law or fact" requirement. The Court notes that, in the context of third-party claims of access to information generated through judicial proceedings, courts take a flexible approach to the "common question of law or fact" requirement. *See United Nuclear*, 905 F.2d at 1427 ("When a collateral litigant seeks permissive intervention solely to gain access to discovery subject to a protective order, no particularly strong nexus of fact or law need exist between the two suits.") (citation omitted).

of the rights of the existing parties" was not a concern "when the existing parties have settled their dispute and intervention is for a collateral purpose." *Id.*

Considering all of the circumstances, the Court finds that Volokh's Motion to Intervene and Unseal is timely. Volokh filed his motion shortly after the dispositive motion deadline. Farley's pro se dispositive motion is still pending, and the litigation is still active. As explained above, courts have granted motions to intervene to unseal documents even after the case is concluded. *See San Jose Mercury News, Inc. v. U.S. Dist. Court—N. Dist. (San Jose)*, 187 F.3d 1096, 1101 (9th Cir. 1999) (explaining that delays are tolerated where "an intervenor is pressing the public's right of access to judicial records"). Volokh, a professor and legal blogger who seeks public access to the documents to inform the public and provide legal commentary, does not bear a burden of establishing that he diligently searched for the litigation since the time of its filing. As argued by Volokh, members of the media or legal commentators "are often unaware of the case until they stumble across it as they research other projects." ECF No 61 at 2.

Nor will Parson suffer prejudice from Volokh's intervention. In the context of permissive intervention, prejudice arises when the "intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see also United Nuclear*, 905 F.2d at 1427 (holding that "Rule 24(b)'s timeliness requirement is to prevent prejudice in the adjudication of rights of the existing parties"). In this case, allowing Volokh to intervene for the limited purpose of seeking to unseal the Letter and related court filings will not delay the proceedings or prevent the parties from adjudicating the case on the merits. Because Volokh seeks this limited type of intervention, his role in the case will essentially be completed upon entry of this Court's Order and resolution of any objections thereto. To the extent Parson argues he will be "prejudiced" because the contents of the Letter are libelous and embarrassing, those arguments

are properly addressed as part of the "merits" issue of whether to grant Volokh's motion to unseal, rather than as part of the Rule 24(b) procedural analysis of whether to grant intervention.

### C. Volokh's Interests Are Not Adequately Represented by Farley

Although not listed in the text of Rule 24(b), adequate representation by an existing party is a relevant consideration and can support a court's denial of permissive intervention. *See Tri-State Generation and Transmission Ass'n, Inc. v. New Mexico Pub. Regulation Comm'n*, 787 F.3d 1068, 1075 (10th Cir. 2015). An existing party may adequately represent the interests of a proposed intervenor where "the objective of the applicant for intervention is identical to that of one of the parties." *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872 (10th Cir. 1986).

Farley and Volokh do not have identical interests in this litigation, and the Court wholly rejects Parson's "adequate representation" argument. *See* ECF No. 60 at 7 (arguing that Volokh and Farley have "the same objective: First Amendment public speech"). Although Farley is arguing that he has a First Amendment right to publicly criticize a candidate for public office, his interest differs from Volokh's interest in obtaining public access to judicial documents. Farley has never challenged the Sealing Order or otherwise sought to vindicate the principle of public access to judicial records. Although Farley does not oppose Volokh's Motion to Intervene and Unseal, Farley lacks the same incentive to invest time and resources in the "public access" issue, given that he already has access to the Letter and related judicial records. While the First Amendment plays some role in both Farley's and Volokh's interests in the litigation, their interests are far from identical.

**IV.    Motion to Unseal**

Having granted Volokh's intervenor status, the Court turns to Volokh's motion to unseal. All parties have had an opportunity to fully brief the unsealing issue, and it is ripe for determination.

The Court concludes that the Letter, and other sealed court filings referencing the Letter, shall be unsealed and made available to the public. In reaching this conclusion, the Court reaches the following resolutions of the parties' specific arguments: (1) the Sealing Order entered by the state court prior to removal is not controlling; (2) the Letter and other sealed filings are judicial documents to which a strong presumption of public access attaches; and (3) Parson has not rebutted the strong presumption in favor of public access.

**A.    Sealing Order Is Not Controlling**

The Letter was originally sealed pursuant to the Sealing Order entered in state court, and other documents were filed under seal post-removal based on the Sealing Order. The Supreme Court has held that Congress "intended to preserve the effectiveness of state court orders after removal" and that a federal court simply "takes the case up where the State court left it off." *Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 436 (1974) (quotations omitted). *See Payne for Hicks v. Churchich*, 161 F.3d 1030, 1037 (7th Cir. 1998) ("In the context of removal, once the case is in federal court, the state court orders issued prior to removal are not conclusive but remain binding until they are set aside."). However, state court orders may be dissolved or modified by the federal court, just as they could by the state court. *See Granny Goose Foods, Inc.*, 415 U.S. at 436 (effect given to state court orders after removal is no greater than effect orders would have had in state court); *see also*

28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court.").

The Sealing Order does not control the outcome of Volokh's motion to unseal for several reasons. First, Volokh's motion to unseal was filed in federal court after removal and is governed by federal law. *Granny Goose Foods, Inc.*, 415 U.S. at 437 (explaining that "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal"). Although the federal and state legal standards are similar, the Court is certainly not bound by the Sealing Order in ruling on a procedural motion governed by federal law. Second, as explained above and as set forth in 28 U.S.C. § 1450, the Court has authority to revisit, modify, and dissolve state court orders entered prior to removal. *See Hauff v. Petterson,* 755 F. Supp. 2d 1138, 1145 (D.N.M. 2010) (federal court free to reconsider earlier summary judgment decisions entered by state court because they were "interlocutory" rather than final judgments). By its own terms, the Sealing Order was interlocutory and would remain in effect only "until such time as the matter can be heard on its merits or further order of this Court." ECF No. 7-1. Finally, and most importantly, this Court (and not the state court) now has the strongest interest in determining whether its own judicial records will remain sealed or will be accessible to the public. Therefore, based on Volokh's filing of the motion to unseal following removal, the Court finds it proper to revisit these issues under federal standards and determine whether to unseal judicial records in this federal litigation.

### B. Requested Court Records are "Judicial Documents" to Which Strong Presumption of Public Access Attaches

"Courts have long recognized a common-law right of access to judicial records." *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (citations omitted).[5] "Before any such common-law right can attach, however, a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006). Although the Tenth Circuit has not clearly defined what constitutes a "judicial document," the Tenth Circuit positively cited the Second Circuit's *Lugosch* decision in a case discussing the common-law right of public access. *See Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012). Therefore, the Court applies general principles outlined in *Lugosch*.

In *Lugosch*, the court held that merely filing a document with the court is insufficient to render that paper a judicial document; instead, it must be "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119 (quotation omitted);

---

[5] The Supreme Court recognizes a First Amendment right of access to criminal trials and related courtroom proceedings. *See Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. 596 (1982) (criminal trial); *Press-Enterprise Co. v. Superior Court of California, Riverside Cnty.*, 464 U.S. 501 (1984) (*Press-Enterprise I*) (voir dire); *Press-Enterprise Co. v. Superior Court of California for Riverside Cnty.*, 478 U.S. 1 (1986) (*Press-Enterprise II*) (preliminary hearing); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (plurality opinion) (criminal trial). However, neither the Supreme Court nor the Tenth Circuit has recognized a First Amendment right to access judicial documents, and the Tenth Circuit has repeatedly declined to address the issue. *See United States v. McVeigh*, 119 F.3d 806, 812 (10th Cir. 1997) (stating that "we have not previously decided, nor do we need to decide in this case, whether there is a First Amendment right to judicial documents"); *United States v. Pickard*, 733 F.3d 1297, 1302 n.4 (10th Cir. 2013) (permitting access to DEA records regarding a confidential informant and holding that "[b]ecause we conclude that Defendants can seek to have the DEA records unsealed under the common law, we have no occasion here to address whether they also have a First Amendment right to have the DEA file unsealed"); *United States v. Gonzales*, 150 F.3d 1246, 1256 (10th Cir. 1998) (rejecting the argument that administrative CJA records qualified as judicial documents, but declining to decide whether other documents might be protected by a First Amendment right of access). Here, the Court resolves the motion to unseal in Volokh's favor by applying the common-law right of access and does not reach Volokh's argument that he also has a First Amendment right of access.

*see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) ("In determining whether a document is a judicial record, we evaluate the relevance of the document's specific contents to the nature of the proceeding and the degree to which access to the document would materially assist the public in understanding the issues before the court, and in evaluating the fairness and integrity of the court's proceedings.") (alterations and quotations omitted). The "modern trend" among circuit courts is to classify pleadings in civil litigation as judicial records, except discovery motions and accompanying exhibits. *See Bernstein*, 814 F.3d at 139; *IDT Corp. v. eBay*, 709 F.3d 1220, 1223 (8th Cir. 2013); *Fed. Trade Comm'n v. Abbvie Prods. LLC*, 713 F.3d 54, 62-63 (11th Cir. 2013).

Volokh seeks access to the following sealed filings in this case: (1) the 7/28/16 Motion to Dismiss, including the Letter, which is attached as Exhibit A (ECF No. 9, filed under seal); (2) the 1/12/18 Dispositive Motion (ECF No. 46, filed under seal); and (3) Parson's Affidavit, which is an exhibit to Parson's response to the 1/12/18 Dispositive Motion (ECF No. 51, filed under seal).[6] These documents easily qualify as judicial documents. The Letter itself is at the center of the controversy and forms the basis of both legal claims; the public cannot understand this litigation without access to the Letter. *See Burke*, 698 F.3d at 1241 (treating confidential settlement agreements as judicial records to which strong presumption of access attached, because agreements were "at the center of [the] controversy" on appeal). The Letter is also now attached to a dispositive motion, which renders it highly relevant to the adjudicative process. *See San Jose Mercury News*, 187 F.3d at 1102 (holding that "federal common law right of public access extends

---

[6] Unsealing these documents will provide Volokh full access to the docket. Although the docket entries referenced above do not precisely match those requested by Volokh in his motion (*see* ECF No. 58 at 2-3), unsealing the above documents is the best method of fully effectuating Volokh's requested relief.

to materials submitted in connection with motions for summary judgment in civil cases prior to judgment"); *see also Angilau v. United States*, No. 2:16-00992-JED, 2017 WL 5905536, at *5 (D. Utah Nov. 29, 2017) (citing *Bernstein* and *Lugosch* in concluding that "[i]t is enough that the document was submitted to the court for use in adjudication; it is not necessary that the court actually cite the document as the basis for its decision"), *aff'd*, No. 2:16-CV-00992-JED-PJC, 2018 WL 1271894, at *1 (D. Utah Mar. 9, 2018). The other requested documents – the 7/28/16 Motion to Dismiss, the 1/12/18 Dispositive Motion, and Parson's affidavit – are dispositive motions or an attachment to a dispositive motion. Without question, these records are relevant to adjudicating the parties' rights; are relevant to the performance of judicial functions; and will assist Volokh and the public in understanding the reasons for the Court's substantive decisions. Therefore, the requested documents are judicial documents to which a presumption of public access attaches.

Next, the Court must determine the weight to be given to the presumption, considering the "role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (quotations omitted). Judicial documents "fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (quotations omitted). If, for example, the Letter was merely attached to a discovery motion, the document may be relevant to the proceedings but entitled to a weaker presumption of access. Here, the sealed Letter, and the sealed dispositive briefs and their attached exhibits, are central to adjudication of the controversy. By asking to maintain the Letter under seal throughout the lawsuit, Parson is essentially asking the Court to shield the entire litigation from the public. Without the Letter and dispositive motions discussing the Letter's contents, the public lacks any meaningful access to the proceedings. Therefore, although the district court has yet to expressly

16

rule on dispositive motions, the Court finds the sealed materials are the type of "judicial documents" entitled to a "strong presumption" of public access. *See Burke*, 698 F.3d at 1242 ("[W]here documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches."); *Angilau*, 2017 WL 5905536, at *9 ("The presumption of access to documents submitted in support of, or in opposition to, a motion for summary judgment is great.") (citation omitted).

### C. Parson's Interests in Avoiding Injury to Reputation or Embarrassment Do Not Outweigh Presumption in Favor of Access

The common-law right of access to judicial records recognized by the Tenth Circuit "is not absolute." *Mann*, 477 F.3d at 1149. The presumption can be rebutted when "countervailing interests heavily outweigh the public interests in access." *Id.* (quotations omitted). To satisfy this standard, the party seeking to maintain documents under seal "must articulate a real and substantial interest that justifies depriving the public of access to the records that inform [the] decision-making process." *Burke*, 698 F.3d at 1242 (quotations omitted); *see also* N.D. Okla. LCvR 79.1 (requiring that party seeking to maintain documents under seal must show that his interest in sealing the document outweighs the "compelling public interest" in public access). "Whether judicial records and other case-related information should be sealed or otherwise withheld from the public is a matter left to the sound discretion of the district court." *Mann*, 477 F.3d at 1149 (citation omitted).

Parson argues that the Letter should remain sealed because it is false, libelous, injures his business reputation, and contains private information that will subject him to "suffering and embarrassment." ECF No. 60 at 11. Parson argues his privacy interests are substantial due to the "outrageousness" of the allegations and his strong likelihood of success. Volokh contends that, if the Court accepts Parson's argument, "all libel cases would be litigated with the key underlying allegations kept secret," and that "any defamation plaintiff could demand secrecy, which would

17

leave the public in the dark as to just why courts are being asked to restrict speech." ECF No. 58 at 10. Volokh also argues that Parson's request for injunctive relief restricting future speech weighs in favor of public access because the public has an "interest in seeing what could possibly lead a candidate for public office to seek such a drastic remedy." *Id.* at 8.

Upon weighing Parson's interests in maintaining the privacy of the disputed judicial documents against the public's interest in access to the adjudicative process, the Court concludes public access must prevail. The Letter accuses Parson of scurrilous behavior, calls him names, and essentially seeks to dissuade others from supporting Parson in his candidacy for state representative. It is less than one page long and written in the form of a bulletin or flyer. If believed, the Letter could potentially damage Parson's reputation, business, and political ambitions. However, the Letter does not reference Parson's sensitive or private information, such as bank account records, social security numbers, or family members' names. Nor does it reference or name any third parties or their sensitive information. This is a garden-variety libel case involving a few allegedly false statements about an individual running for office that are embarrassing and potentially injurious to his reputation and business dealings. Parson has failed to articulate any privacy interests that "heavily outweigh" public access and warrant the drastic remedy of preventing the public from understanding the nature of his lawsuit. Courts have held that injury to one's reputation and potential embarrassment generally do not outweigh the strong presumption of public access attaching to judicial documents. *See Mann*, 477 F.3d at 1149 (embarrassment flowing to plaintiff based on allegations in her own complaint regarding ongoing feud with family and disclosure of Alzheimer's diagnosis was not "sufficiently critical" to outweigh strong presumption in favor of public access); *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 915 (E.D. Tenn. 2009) (noting that "harm to reputation" is generally not sufficient to

overcome presumption in favor of public access); *Hillsboro Feed Co. v. Biro*, No. 2:13-cv-405-PJK-LAM, 2013 WL 12329129, at *1 (D.N.M. Sept. 17, 2013) (declining to seal judicial records that included "highly-personal, unflattering details" about personal relationships and allegations about a party's mental health); *cf. Giuffre v. Maxwell*, 325 F. Supp. 3d 428, 446 (S.D.N.Y. 2018) (finding strong presumption of public access to summary judgment records was outweighed by privacy interests of "dozens of non-parties who provided highly confidential information relating to their own stories . . . in reliance" on a protective order, and where pleadings contained sensitive information about sexual abuse of minors). Further, the Court finds Parson's privacy interests in the Letter particularly uncompelling, because Parson was running for public office when the Letter was written and the Letter expressly references his candidacy.

Parson seems to assert that the Court should test Farley's defenses and, presumably, deny the motion to unseal if Parson is likely to succeed on the merits of his libel or false light invasion of privacy claims. This argument misses the point. If Parson succeeds at summary judgment or trial, the Letter's contents will be the focal point of that adjudicatory process.[7] If the Letter and its contents remain sealed, future court proceedings would need to remain sealed, and the public would be excluded from the process. The public would be unable to determine whether and to what extent a candidate for public office successfully prosecuted a libel claim and obtained compensatory and/or injunctive relief. Volokh, the proposed intervenor, wants to review, understand, and comment on these legal proceedings both due to his interest in First Amendment jurisprudence and to assist the public in checking the integrity of the judicial branch. These are

---

[7] The Letter, and the envelope that contained the Letter, are listed as Exhibits 1 and 2 on Parson's Final Exhibit List. ECF No. 64. At trial, a First Amendment right of access clearly attaches under Tenth Circuit law, *see supra* note 5, rendering the presumption of access even more difficult for Parson to overcome.

proper and laudable purposes. Although Parson appears to believe his lawsuit is a private matter, he is mistaken. By seeking money damages and injunctive relief in a court of law, he subjected himself to public court proceedings, including any consequences of further public disclosure of the Letter. *See Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) ("Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case.").

## V. Conclusion

For the reasons set forth in this Opinion and Order, Professor Volokh's Motion to Intervene and Unseal (ECF No. 58) is **GRANTED in part** and **DENIED in part** as follows:

Volokh's motion to intervene is granted, and Volokh is granted intervention for the limited purpose of seeking access to sealed records in this litigation.

Volokh's motion to unseal is granted, and the Clerk is directed to unseal the following documents: ECF No. 9; ECF No. 46; ECF No. 51. This effectuates the unsealing of all sealed documents in these proceedings.

Volokh's motion to register as a CM/ECF user and file electronically is granted, and the Clerk is directed to mail Plaintiff a CM-ECF registration form. Upon receipt, Plaintiff is directed to complete the CM-ECF registration form and return it to the Court Clerk's office for processing.

Volokh's motion for expedited consideration is denied.[8]

The Court **STAYS** this Order for fourteen (14) days to allow Parson the opportunity to object to this Opinion and Order, if desired.

**SO ORDERED** this 2nd day of November, 2018.

*[signature]*
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[8] The Motion to Intervene and Unseal was referred after the relevant election took place, and the request for expedited consideration based on the timing of the election is now moot.